OPINION
{¶ 1} Defendant, Dejuan Kemp, appeals from his convictions for Involuntary Manslaughter, R.C. 2903.04, and Aggravated Robbery, R.C.2911.01, both first degree felonies, which were entered on his pleas of guilty. The trial court sentenced Defendant to an eight-year term of incarceration for each offense, the two terms to be served consecutively, for a total of sixteen years.
 {¶ 2} Defendant argues on appeal that his guilty pleas were not knowing, intelligent, and voluntary. Those due process standards must be satisfied to support the waiver of constitutional rights on which a plea of guilty or no contest is predicated. To meet that requirement, the record must affirmatively demonstrate that the defendant acted with sufficient awareness of the relevant circumstances and likely consequences of the guilty plea. Brady v. United States (1970),397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747.
 {¶ 3} Kemp was one of three co-defendants who were similarly charged in a five-count indictment. It appears that they, along with a fourth man, had attempted a robbery, and that the robbery victim fired a shot that killed the fourth man. All three co-defendants appeared before the court on March 17, 2003, to enter guilty pleas to two of the charges. The State dismissed the remaining three in exchange. The State and each defendant also agreed that the court would impose the same sixteen year prison term on each defendant.
 {¶ 4} During the plea colloquy the court asked each defendant whether he'd read the plea agreement. The other two co-defendants said they had read it. The court then made the same inquiry of Defendant Kemp, producing the following colloquy:
 {¶ 5} "THE COURT: And, Mr. Kemp, have you read this plea agreement?
 {¶ 6} "DEFENDANT KEMP: Parts of it, Your Honor.
 {¶ 7} "THE COURT: Well, I want to ask if each of you understands the plea agreement.
 {¶ 8} "Mr. Kemp, do you understand this plea agreement?
 {¶ 9} DEFENDANT KEMP: I truthfully don't sir.
 {¶ 10} "THE COURT: Okay. Well, they you — I assume you don't want to proceed with the plea?
 {¶ 11} "DEFENDANT KEMP: I got no choice. I mean, they taking my life regardless so I got no choice.
 {¶ 12} "THE COURT: Well, you do have a choice to have a trial.
 {¶ 13} "DEFENDANT KEMP: Man, they'd bang me in the field, man. Ain't no ink bearing here, man. I ain't got no choice to take the deal. My lawyer ain't trying to fight for me, man. That's real, man.
 {¶ 14} "THE COURT: Do you want to plead guilty under this plea agreement?
 {¶ 15} "DEFENDANT KEMP: I got to, Your Honor." (T. 6-7).
 {¶ 16} The court then inquired of each co-defendant whether he wished to plead guilty to the offenses of Involuntary Manslaughter and Aggravated Robbery charged in the indictment. Defendant Kemp replied that he did. (T. 8). The prosecutor asked for a sidebar conference and expressed his concern about Defendant Kemp's reply to the court's inquiries concerning the written plea agreement. (T. 9). The court stated that it would not accept Kemp's guilty plea "at this time" (T. 9), which Kemp's attorney said was "a good idea." (T. 10). When the open proceedings resumed, the court stated:
 {¶ 17} "THE COURT: Okay. After bench conference with counsel for each defendant and the prosecuting attorney, Mr. Schumaker, the Court feels that Mr. Kemp does not wish to enter into a voluntary plea a this time; and, therefore, the Court will — will remove Mr. Kemp from the —
 {¶ 18} "DEFENDANT KEMP: I plead to it, Your Honor.
 {¶ 19} "THE COURT: Well, you might want to discuss it with your attorney. If you have some reservations, express that to your counsel. The Court and the prosecuting attorney both feel that this is not a plea you wish to enter into at this time. If you have some reservations, you may discuss that with your attorney; and we won't take the plea at this time. Is that agreeable, Mr. Schumaker?
 {¶ 20} "MR. SCHUMAKER: Yes, Your Honor.
 {¶ 21} "THE COURT: Okay. Then —
 {¶ 22} "MR. WEST:[1] Your Honor, Mr. Kemp has just indicated to me that he does want to proceed and that he would answer your questions that he does understand the plea agreement and does want to proceed.
 {¶ 23} "THE COURT: Does the State want to proceed on the plea?
 {¶ 24} "MR. WEST: You can ask him the questions again." (T. 10-11).
 {¶ 25} The court then resumed the Crim.R. 11(C) plea colloquy. Defendant Kemp expressed a positive understanding and agreement with respect to each question asked. After the court had accepted the three co-defendant's guilty pleas, each was asked whether he wished to make a statement with respect to the agreed sixteen-year sentence. Kemp stated:
 {¶ 26} "Yeah. I would like to make a statement. I would like to just, you know, apologize for the whole situation; and I'd like to also say that I feel like, man. I feel that the justice just wasn't served.
 {¶ 27} "I feel like 16 years out of my life is a long time. I could feel like what could 16 years do for me besides make me a real menace to society? I feel like, man, 16 years ain't going to do nothing but take my life.
 {¶ 28} "I didn't really take nobody's life, man. I just feel like the sentence should have been a little reduced some, Your Honor, because I just — I just feel like, man. It's just taking my life for no reason.
 {¶ 29} "I understand that I did have my involvement, but I don't — I just don't see that 16 years though. That's a long time. I know I ain't got no say, but just, you know, just trying to, man. That's just my life, man.
 {¶ 30} "THE COURT: Do you wish to proceed under the plea agreement?
 {¶ 31} "DEFENDANT KEMP: Yeah, all I got — yeah, I do.
 {¶ 32} "THE COURT: Okay. And this is a voluntary plea? You understand the nature of the charge and consequence of the plea?
 {¶ 33} "DEFENDANT KEMP: Yes, sir." (T. 28-29).
 {¶ 34} Kemp doesn't complain that the Crim.R. 11(C) plea colloquy in which the court engaged him was insufficient. Rather, he argues that the reservations and protestations he expressed were so strong as to prevent what Kemp terms his "sudden change of heart" (Brief, p. 4) from permitting the court instead to proceed after it had announced that it would not accept Kemp's guilty plea.
 {¶ 35} A guilty plea and the waiver of rights it involves is voluntary when it is cognitive, deliberate, and effected by choice, and uncoerced to the extent that it is self-willed. Then, the decision to enter the plea is the defendant's own choice. The fact that the choice that's made is an unwanted result of circumstances a defendant finds himself otherwise powerless to control doesn't render the plea involuntary in a legal or constitutional sense.
 {¶ 36} It has been said that we live in a time when all relationships between people are governed by the market-based rules of barter and exchange. However dismal that generalization may be, it does apply to calculations criminal defendants are required to make when offered a plea bargain. Typically, all the alternatives before them are bad and impose burdens the defendant would rather not endure. However, the fact that a defendant's choice to assume the least onerous of them is an unhappy one does not render that choice involuntary. One might say of the criminal justice system what Mr. Dooley remarked about politics; "it ain't beanbag."
 {¶ 37} Kemp's reservations and protestations portray that he was unhappy with the choice he made because he had to make it, not that his act of making a choice was other than cognitive, deliberate, and self-willed. His guilty plea was therefore not involuntary in a constitutional sense. Any remaining implication that it might be is resolved by the subsequent Crim.R. 11(C) plea colloquy in which he denied any compulsion, influence, or lack of understanding.
 {¶ 38} The assignment of error is overruled. Kemp's conviction and sentence will be affirmed.
Brogan, J. and Wolff, J., concur.
[1] Counsel for Defendant Kemp.