[Cite as *State v. Woodruff*, 2013-Ohio-5161.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                              :
                                          :        Appellate Case No. 25697
       Plaintiff-Appellee              :
                                          :        Trial Court Case No. 12-CR-3437
v.                                        :
                                          :
ROBERT L. WOODRUFF                         :        (Criminal Appeal from
                                          :         Common Pleas Court)
       Defendant-Appellant             :
                                          :

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of November, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MATTHEW T. CRAWFORD, Atty. Reg. #0089205, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

WILLIAM T. DALY, Atty. Reg. #0069300, 70 Birch Alley, Suite 240, Dayton, Ohio 45440
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, P.J.

{¶ 1}    Defendant-appellant Robert L. Woodruff appeals from his conviction and

sentence for Felonious Assault, following a no-contest plea. Woodruff contends that the trial court failed to determine that his plea was knowing, intelligent, and voluntary, because it failed to follow up on Woodruff's initial statement, when asked if pleading no contest was what he wanted to do, that: "Well, I'm not seeing where I have much of a choice."

{¶ 2} We conclude that upon the complete record, which includes Woodruff's subsequent statement that he was entering his plea voluntarily, the trial court could reasonably construe Woodruff's initial comment as a recognition that accepting the offered plea bargain limiting his sentence to the minimum sentence of two years was clearly preferable to the alternative choice of going to trial and risking a more severe sentence. Therefore, we conclude that the record does not support Woodruff's sole assignment of error, and the judgment of the trial court is Affirmed.

## I.  The Course of Proceedings

{¶ 3} Woodruff was charged by indictment with Felonious Assault (serious physical harm), in violation of R.C. 2903.11(A)(1), a felony of the second degree. His trial was scheduled to start on Monday, March 18, 2013. On the Wednesday before trial, just after 10:00 in the morning, Woodruff appeared in open court with his trial attorney for a final pre-trial, during the course of which a potential plea bargain was discussed. Woodruff's counsel reported that the State and the trial court had indicated a willingness to sentence Woodruff to the minimum, two-year sentence if he would plead no contest to the charge, with his two-year sentence in this case to be served consecutively to a sentence he was already serving in another case. Woodruff's counsel further reported that Woodruff had indicated he was not inclined to

agree to the proposed plea agreement unless his two-year sentence in this case would be imposed concurrently with the sentence in the other case.

{¶ 4}    Complicating the matter was the fact that Woodruff had an appeal pending from his conviction and sentence in the other case.  Also complicating the matter was the fact that there was a discovery dispute between Woodruff and the State pending in this case concerning certain records pertaining to his alleged victim, who had been convicted of a felony.

{¶ 5}    During this discussion, Woodruff made it clear that his hope in this case was   to establish that his assault upon the victim was under the influence of sudden passion or in a sudden fit of rage, brought on by serious provocation by the victim reasonably sufficient to have incited Woodruff into using deadly force, which would make his offense Aggravated Assault, a fourth-degree felony, rather than Felonious Assault.

{¶ 6}    The trial court advised Woodruff that: (1) it could not guarantee him that he would be successful in his appeal in the other case, but that appeal was something for him to consider; (2) if Woodruff were convicted of Aggravated Assault in this case, the visiting judge who would be presiding over his trial would, "I strongly suspect," sentence him to the maximum, eighteen-month prison term, to be served consecutively to the sentence he was already serving; and (3) the trial court had ordered the State to produce the disputed discovery documents for in camera review, and the trial court would render its decision about the discovery dispute by Friday morning, March 15th.  It was then agreed that the parties would return to court at about 10:45 the next morning, with Woodruff having until then to think about the offered plea bargain.

{¶ 7}    When the parties reappeared before the trial court the following morning, the trial court recited the terms of the plea agreement, after which the following colloquy was had:

THE COURT: So, with that being said; is that what you want to do today?

THE DEFENDANT: *Well, I'm not seeing where I have much of a choice.*

THE COURT: All right. Is that what you want to do today?

THE DEFENDANT: Yeah.

THE COURT: All right. I want you to come forward. All right, Mr. Woodruff, we're going to go through the process of taking your plea. First of all, Mr. Woodruff, I need to – looks like you're age 41; is that correct?

THE DEFENDANT: In August.

THE COURT: Oh, so you're, 40, all right. You need to take your hand away from your mouth so there's – there's no problem with the recording. So you're age 40; how far did you go in school, sir?

THE DEFENDANT: GED.

THE COURT: So you can read and understand the plea form?

THE DEFENDANT: Perfectly.

THE COURT: As we speak this morning, are you under the influence of any drug, alcohol or medication?

THE DEFENDANT: Not at all.

THE COURT: Have you been – are you – do you have any physical or mental disability or problem that would have any impact upon your ability to understand what we are doing today?

THE DEFENDANT: Zero.

THE COURT: *Are you entering this plea voluntarily and of your free will?*

THE DEFENDANT: *Yes.*

THE COURT: *Have you been threatened or forced in any way to enter this plea?*

THE DEFENDANT: *No, they have not*.

(Emphasis added.)

**{¶ 8}**    The plea colloquy then continued, with Woodruff ultimately tendering his no-contest plea to the charge of Felonious Assault.   The trial court accepted the plea and found Woodruff guilty of the charge.   The trial court then proceeded immediately to impose the two-year sentence, to be served consecutively to the sentence Woodruff was serving in another case, consistently with the plea agreement.

**{¶ 9}**    From his conviction and sentence, Woodruff appeals.

## II.   The Record Does Not Support Woodruff's Contention that the Trial Court Failed to Determine that his Plea Was Knowing, Intelligent, and Voluntary

**{¶ 10}**    Woodruff's sole assignment of error is as follows:

THE TRIAL COURT ERRED IN ACCEPTING A PLEA WHICH WAS NOT VOLUNTARY, KNOWINGLY [sic] AND INTELLIGENT.

**{¶ 11}**    Most of Woodruff's argument centers on his statement that he didn't see where he had "much of a choice" when he was asked what he wanted to do.

**{¶ 12}**    A defendant at a plea hearing in a felony case is in an unenviable position. Woodruff had two choices.   He could accept the offered plea bargain and limit his exposure to a two-year prison sentence, or he could reject it and go to trial, where he would be exposed to a possible eight-year prison sentence.   In this case, Woodruff evidently accepted the fact that an

acquittal was an unlikely outcome, so that the best he could realistically hope for if he went to trial would be a conviction for the lesser offense of Aggravated Assault. The trial court had advised him that the visiting judge who would preside over his trial would likely sentence him to the maximum sentence of eighteen months for Aggravated Assault, to be served consecutively to the sentence he was already serving, so that Woodruff's best realistic case scenario would have resulted in a sentence only six months shorter than the sentence he received as a result of the plea bargain. Had he rejected the plea bargain, he could have served up to six years longer in prison as a result.

{¶ 13} The situation of any defendant at a plea hearing necessarily involves some coercion. Most defendants in Woodruff's position would doubtless prefer a third choice: to walk away from the courtroom and never come back. But that choice was not on offer.

{¶ 14} In view of Woodruff's subsequent statements that he was tendering his plea voluntarily of his own free will, and that no one had threatened him or forced him to enter his plea, we conclude that the trial court could reasonably have determined that Woodruff's initial statement that he didn't see that he had much of a choice in the matter was merely an allusion to the unenviable situation in which he found himself, with two choices, neither of which was desirable. *See State v. Kemp*, 2d Dist. Clark No. 03CA0025, 2004-Ohio-167, ¶ 11, 35-37, in which a defendant's initial protestation that "I got no choice," was held not to have rendered a guilty plea other than voluntary.

{¶ 15} Woodruff also argues in his brief that:

> [T]he defendant did not have any basis for a knowing, voluntary and
>
> intelligent plea as he was never provided the discovery sought. The state failed to

turn over discovery in this case. Counsel for the defense filed a motion to compel this discovery on 3/12/13. Counsel for the defense did not obtain or review the discovery with appellant, nor advise appellant of his rights, any motions he could file or any defenses he could bring forth. There is no dialogue in the Crim.R. 11 advisement as to these rights or whether counsel had discussed these rights with appellant, which usually is asked by the trial court under Crim.R. 11 when accepting a plea.

{¶ 16} Woodruff also attached his own affidavit to his brief, but we agree with the State that Woodruff's affidavit is not properly before us, since it is not part of the record before the trial court.

{¶ 17} Crim.R. 11(C)(2)(a) requires a trial court, in accepting a plea to a felony, to determine: "that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions." The Rule also requires that the trial court determine that the defendant understands the effect of the plea of no contest, and that by pleading no contest, the defendant is waiving various constitutional rights. Crim.R. 11(C)(2)(b) and (c). From our review of the record, we conclude that the trial court satisfied all of these requirements.

{¶ 18} The record not only fails to support Woodruff's claims, it affirmatively belies some of them. For example, there are several receipts in the record itemizing the discovery that Woodruff's trial counsel received from the State at various times. And the pre-trial conference of March 13th, at which the possible plea bargain was discussed, demonstrates that Woodruff's

counsel discussed with him the trial strategy of arguing that he was guilty at most of Aggravated Assault, not Felonious Assault. There is nothing in the record to establish, or even suggest, that trial counsel failed to review with Woodruff the discovery that was obtained from the State.

{¶ 19} There was a pending discovery issue before the trial court when Woodruff tendered his plea. Two days before Woodruff's plea was tendered and accepted, he moved to compel the discovery of psychological evaluations and reports pertaining to the sanity and competency of the complaining witness in two felony cases involving the complaining witness. In that motion, Woodruff states: "Defendant has made written and telephone demands for said discovery but State refuses to provide it until the Court has reviewed the matter and ruled upon the instant motion."

{¶ 20} There is nothing in the record to suggest that the State's resistance to this discovery was either frivolous or in bad faith. The trial court told Woodruff that it had ordered the State to produce the documents requested for in camera review, and that it would rule on the motion Friday morning, March 15, 2013, the day after Woodruff's plea was tendered and accepted, and the Friday before the trial was scheduled to commence on Monday.

{¶ 21} We conclude that the fact that this discovery dispute was pending when Woodruff pled no contest did not render his plea other than voluntary, knowing, and intelligent. There is nothing in the record to reflect that the plea offer would not have been kept open until after the trial court had ruled on the discovery motion, but even if there were, we conclude that this would not have rendered Woodruff's plea other than voluntary, knowing, and intelligent.

{¶ 22} Legal disputes may be resolved by a plea bargain just as factual disputes may. With respect to factual disputes, we are aware of no cases holding that the State must keep a plea

offer open until after a jury has rendered its verdict in a case. One essential purpose of plea negotiation is to reduce the uncertainties to which the parties are otherwise subject. The State presumably offers attractive plea bargains, at least in part, precisely because there is a chance that taking the case to trial might result in a worse outcome for the State, just as the defendant may accept a plea bargain, at least in part, because the outcome of a trial might be worse for the defendant.

{¶ 23} The outcome of a criminal trial may involve both factual and legal disputes. Both kinds of disputes may affect the bargaining positions of the parties during plea negotiations, and both may be resolved by the plea negotiated. Here, the documents requested by Woodruff may have been discoverable, or they may not have been. That was a legal issue that had not yet been decided by the trial court. Both parties were free to incorporate their assessments of the likely resolution of that issue in their decisions, respectively, whether to offer and whether to accept the plea bargain that was ultimately agreed to in this case.

{¶ 24} In short, uncertainty in the outcome of a criminal trial has never, to our knowledge, been deemed to render a defendant's decision to plead other than voluntary, knowing, and intelligent.

{¶ 25} Woodruff's sole assignment of error is overruled.

### III. Conclusion

{¶ 26} Woodruff's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.


Copies mailed to:

Mathias H. Heck
Matthew T. Crawford
William T. Daly
Hon. Michael Tucker